1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

BETH SHOLTIS,                                    CASE NO. CV F 09-0383 LJO GSA

        Plaintiff,                      **ORDER ON DEFENDANTS' F.R.Civ.P. 12
                                MOTION TO DISMISS SECOND AMENDED
  vs.                                  COMPLAINT**
                                       (Doc. 16.)

CITY OF FRESNO, et al.,

        Defendants.
                               /

## INTRODUCTION

Defendants City of Fresno ("City"), its police department and five of its police officers seek to dismiss pro se plaintiff Beth Sholtis' ("Ms. Sholtis'") personal property deprivation claims as barred for failure to allege sufficient facts and to satisfy limitations periods and government claims filing requisites. Ms. Sholtis filed no papers to oppose dismissal of her claims. This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the November 30, 2009 hearing, pursuant to Local Rule 78-230(c), (h). For the reasons discussed below, this Court DISMISSES this action.

## BACKGROUND[1]

### Summary

Ms. Sholtis pursues federal and California claims arising from loss of her "personal belongings"

---

[1]    The factual recitation is derived generally from Ms. Sholtis' Second Amended Complaint ("SAC"), the target of defendants' challenges.

1

1   after Ms. Sholtis trespassed into a Fresno residence and was taken to a mental hospital.  In addition to

2   the City, the SAC names as defendants the Fresno Police Department ("Department") and Department

3   officers Antonio Route, Daniel Gomez, Chris Cooper, Ryan Stockdale and Jennifer McClelland.[2]

4   **Admission To Psychiatric Unit**

5          On February 28, 2006, Ms. Sholtis was homeless and entered a Fresno home, thinking she had

6   been "invited inside by the owner."  Ms. Sholtis placed in the home's living room her belongings,

7   including clothes, jewelry, "personally written book manuscripts, short stories and poetry," artwork,

8   "personally designed and made clothing," family photos, and "personal records."  Ms. Sholtis proceeded

9   to take a bath.

10          The defendant officers arrived at the home, forced Ms. Sholtis out of the tub, walked her naked

11   into the living room, handcuffed her and told her to dress.  Ms. Sholtis could not dress while handcuffed.

12   A female officer tried to dress Ms. Sholtis and grabbed her "private parts" when Ms. Sholtis "scuffled"

13   with the female officer.

14          An officer asked Ms. Sholtis if she wanted to go to jail or the hospital, emphasizing "at the jail

15   they have weapons."  The comment scared Ms. Sholtis into choosing the hospital.

16          When an ambulance arrived, Ms. Sholtis asked if she could bring her belongings and an officer

17   said she was unable to do so.  Ms. Sholtis was taken to the hospital's psychiatric unit where she stayed

18   10 days "under Section 5150."  The defendant officers did not complete a list of Ms. Sholtis' belongings

19   "as legally required to do in Welfare and Institutions Code 5156."

20          On March 20, 2006, Ms. Sholtis left Fresno for Ohio where she lived for two years.  Ms. Sholtis

21   returned to Fresno on January 21, 2008.

22   **Attempts To Recover Belongings**

23          Less than two weeks after February 28, 2006, Ms. Sholtis contacted the Department "numerous

24   times" to ask for help to recover her belongings.  After Ms. Sholtis left for Ohio, she telephoned the

25   Department in summer 2006 and spoke to employees in the Department's "Property Records."  Ms.

26   Sholtis was informed that there was no evidence in the February 28, 2006 incident police report that her

27

28          [2]    The five Department officers will be referred to collectively as the "defendant officers."  The City, Department and defendant officers will be referred to collectively as "defendants."

1  "property had even been taken into custody."  The defendant officers "lost her property due to their

2  inconsiderate and careless disregard for her belongings and well-being, confiscating her property during

3  the night of February 28, 2006 but then losing it by not taking it into custody."  In spring 2009, an officer

4  told Ms. Sholtis that her belongings were lost and destroyed.

5  **Limitations Period Tolling**

6  　　　　The SAC alleges that Ms. Sholtis left California before the limitations period began in that she

7  "first found out" of her property's loss "in summer 2006, so if tolling for statute of limitations, the time

8  begins then."

9  　　　　The SAC seeks to toll the limitations period for 21 months in that after Ms. Sholtis' February

10  28, 2006 admission to a psychiatric unit, she was:

11  　　　　1.　　　　Hospitalized in an Ohio "psychiatric hospital for mental illness" during June through July

12  　　　　　　　　2006, September through November 2006, March 2007, and June through December

13  　　　　　　　　2007 for 13 months when Ms. Sholtis "was not competent to stand for such legal

14  　　　　　　　　matters";

15  　　　　2.　　　　Apprehended by the Department again on June 30, 2008 and hospitalized until October

16  　　　　　　　　30, 2008;

17  　　　　3.　　　　Was subject to a conservatorship during June 30, 2008 to March 2, 2009; and

18  　　　　4.　　　　Was "released from conservatorship" on May 8, 2009.

19  **Ms. Sholtis' Claims**

20  　　　　The SAC alleges two federal constitutional deprivation claims under 42 U.S.C. § 1983 ("section

21  1983") and five California constitutional, statutory and common law claims.[3]  The SAC seeks "return

22  of plaintiffs' [sic] property," $100,000, punitive damages and a declaration that defendants violated Ms.

23  Sholtis' "rights under the United States Constitution, the California Constitution, the laws of the United

24  States and the laws of California."

25  / / /

26

27

28  　　　[3]　　　This Court will address the claims in greater detail below.

3

1

## DISCUSSION

2

### F.R.Civ.P. 12(b)(6) Motion Standards

3  "A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal

4 may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service,*

5 *Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981).  Sua

6 sponte dismissal may be made before process is served on defendants.  *Neitzke v. Williams*, 490 U.S.

7 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*,

8 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte

9 prior to service of process on defendants).

10  A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

11 forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

12 of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

13 whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

14 support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

15 *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

16 there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

17 cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

18 *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

19  In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

20 most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

21 whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

22 *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

23 true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

24 *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court

25 need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly

26 be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911

27 F.2d 242, 247 (9th Cir. 1990).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

28 not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement

4

1    to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

2    of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007)

3    (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the

4    light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."

5    *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint

6    . . . must contain either direct or inferential allegations respecting all the material elements necessary to

7    sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting

8    *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

9        In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

10   explained:

11          To survive a motion to dismiss, a complaint must contain sufficient factual
         matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A
12       claim has facial plausibility when the plaintiff pleads factual content that allows the court
         to draw the reasonable inference that the defendant is liable for the misconduct alleged.

13
            . . . Threadbare recitals of the elements of a cause of action, supported by mere
14       conclusory statements, do not suffice.  (Citation omitted.)

15       For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the

16   complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).

17   Nonetheless, a court may consider exhibits submitted with the complaint.  *Van Winkle*, 290 F.Supp.2d

18   at 1162, n. 2.   In addition, a "court may consider evidence on which the complaint 'necessarily relies'

19   if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3)

20   no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450

21   F.3d 445, 448 (9th Cir. 2006).  A court may treat such a document as "part of the complaint, and thus may

22   assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States

23   v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).  Such consideration prevents "plaintiffs from surviving a

24   Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are

25   based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[4]   A "court may disregard allegations

26

27          [4]      "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim
     depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not
28   dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document

5

1  in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck*

2  *Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston*

3  *Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).  Moreover, "judicial notice may be taken of a fact to show

4  that a complaint does not state a cause of action."  *Sears, Roebuck & Co. v. Metropolitan Engravers,*

5  *Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th

6  Cir. 1997).  A court properly may take judicial notice of matters of public record outside the pleadings'"

7  and consider them for purposes of the motion to dismiss.  *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646,

8  649 (9th Cir. 1988) (citation omitted).

9       With these standards in mind, this Court turns to defendants' challenges to the SAC.

10                                    **Capacity To Sue**

11       Defendants question Ms. Sholtis' capacity to pursue this action given the absence of

12  documentation that she is no longer subject to conservatorship.

13       Capacity to sue "for a individual who is not acting in a representative capacity" is determined

14  "by the law of the individual's domicile."  F.R.Civ.P. 17(b)(1).  As such, defendants point to California

15  Code of Civil Procedure section 372(a) which requires "an incompetent person . . . for whom a

16  conservator has been appointed" to appear by a guardian, conservator or guardian ad litem.  Defendants

17  hold Ms. Sholtis to verify that a California Probate Court has released her from conservatorship.

18       Ms. Sholtis' failure to verify release from conservatorship supports dismissal of this action.

19                         **Department Not Subject To Section 1983 Claims**

20       The SAC's (first) unreasonable search and seizure claim alleges that defendants violated

21  "plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment to the

22  United States Constitution and 42 U.S.C. Section 1983."  The SAC's (second) deprivation of property

23  claim alleges that defendants violated "plaintiffs' [sic] right to due process of law under the Fourteenth

24  Amendment of the United States Constitution and 42 U.S.C. Section 1983."

25       Defendants contend that the Department is an improper defendant given that the SAC names the

26  City as a defendant.

27

28  in the complaint."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

                                         6

1    The term "persons" under section 1983 encompasses state and local officials sued in their

2    individual capacities, private individuals and entities which acted under color of state law, and local

3    governmental entities. *Vance v. County of Santa Clara*, 928 F.Supp. 993, 995-996.  However, the term

4    "persons" does not encompass municipal departments.  *Vance*, 928 F.Supp. at 996.  "Naming a

5    municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a

6    municipality." *Stump v. Gates*, 777 F.Supp. 808, 816 (D.Colo.1991).

7    The Department is an improper defendant to warrant dismissal of the section 1983 claims against

8    the Department.

9                                  **Section 1983 Limitations Period**

10    Defendants argues that the duration between the February 28, 2006 incident and Ms. Sholtis'

11    March 2, 2009 filing of this action "strongly suggests" that Ms. Sholtis' section 1983 claims are barred.

12    Federal civil rights statutes have no independent limitations period.  *Johnson v. State of*

13    *California*, 207 F.3d 650, 653 (9th Cir. 2000); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 711

14    (9th Cir. 1993) (California's statute of limitations for personal injury actions governs claims brought

15    pursuant to 42 U.S.C. §§ 1981, 1983, and 1985)*; McDougal v. County of Imperial*, 942 F.2d 668, 673-

16    674 (9th Cir. 1991) ("suits under § 1985(3) are also best characterized as personal injury actions and are

17    governed by the same statute of limitations as actions under § 1983"); *Abreu v. Ramirez*, 284 F.Supp.2d

18    1250, 1257 (C.D. Cal. 2003).  The applicable limitations period is determined by borrowing the forum

19    state's limitations period for personal injuries.  *Johnson*, 207 F.3d at 653; *Abreu*, 284 F.Supp.2d at 1257.

20    Section 1983 and related federal civil rights claims "are best characterized as personal injury actions."

21    *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938 (1985).

22    On January 1, 2003, California Code of Civil Procedure section 335.1 ("section 335.1")[5] took

23    effect to extend the prior limitations period for personal injury actions (and correspondingly to federal

24    civil rights claims, *see Wilson*, 471 U.S. at 271-272, 105 S.Ct. 1938; *Johnson v. Railway Express*

25    *Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716 (1975); *Krug v. Imbrodino*, 896 F.2d 395, 396-397 (9th Cir.

26    1990)), from one year under former California Code of Civil Procedure section 340(3) to two years.

27

28          [5]    Section 335.1 provides: "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

7

*Abreu*, 284 F.Supp.2d at 1255; *see* Cal. Senate Bill 688 (Burton), Stats. 2002, ch. 448, §3. Applying California law, federal civil rights claims which arise in California are generally barred if not brought within two years if they accrued after January 1, 2003. *See Johnson*, 421 U.S. 454, 95 S.Ct. 1716; *Elliot v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994); *Krug*, 896 F.2d at 396-397; *see also Taylor*, 993 F.2d at 711.

Federal law "determines when a federal cause of action accrues, despite the fact that state law determines the relevant statute of limitations." *Wetzel v. Lou Ehlers Cadillac Group*, 189 F.3d 1160, 1163 (9th Cir. 1999); *Elliott*, 25 F.3d at 801-802. Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). "Generally, the statute of limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury." *De Anza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991). The California Supreme Court has explained:

> Possession of "presumptive" as well as "actual" knowledge will commence the running of the statute. The applicable principle has been expressed as follows: "when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation . . . the statute commences to run."

*Sanchez v. South Hoover Hospital,* 18 Cal.3d 93, 101, 132 Cal.Rptr. 657 (1976) (citations omitted).

Defendants argue that Ms. Sholtis' unreasonable search and seizure claim accrued on February 28, 2006 when she was taken to the psychiatric unit. Defendants contend that the SAC reveals that her deprivation of property claim accrued no later than summer 2006 when Ms. Sholtis was advised that the Department had no record of having her belongings.

The face of the SAC reveals that Ms. Sholtis' unreasonable search and seizure claim accrued on February 28, 2006 in that she had no less than presumptive knowledge of her claim on that date. The face of the SAC further reveals that her deprivation of property claim accrued no later than summer 2006 when Ms. Sholtis received the Department's acknowledgment that it lacked Ms. Sholtis' belongings. As such, attention turns to whether the two-year limitations period was tolled.

Defendants are correct that Ms. Sholtis' absence from California does not toll the limitations period in that California Code of Civil Procedure section 351 addresses the absence from California of

8

1  a defendant, not a plaintiff.

2      As to mental illness, California Code of Civil Procedure section 352(a) tolls the limitations

3  period for "disability" if the plaintiff is "at the time the cause of accrued . . . insane."  For purposes of

4  California Code of Civil Procedure section 352(a), a plaintiff is "insane" if "incapable of caring for his

5  [or her] property or transacting business or understanding the nature or effects of his [or her] acts."

6  *Pearl v. Pearl,* 177 Cal. 303, 307, 177 P. 845 (1918).  "Insane" under the statute "has been defined as

7  a condition of mental derangement which renders the sufferer incapable of caring for his property or

8  transacting business, or understanding the nature or effects of his acts."  *Hsu v. Mt. Zion Hospital*, 259

9  Cal.App.2d 562, 571, 66 Cal.Rptr. 659 (1968).

10     Defendants argue that the SAC demonstrates that Ms. Sholtis "was able to care for her property

11  and transact business" based on its allegations that Ms. Sholtis made numerous 2006 inquiries to the

12  Department regarding her belongings.  Defendants point to Ms. Sholtis' February 28, 2008 declaration

13  to support her late government claim against the City.  In the declaration, Ms. Sholtis states:

14         I did not hear from the Fresno Police Department again about my personal property until
            I contacted them months later, despite requests in the weeks following this incident by
15         telephone and by stopping in at two different stations to ask for assistance in getting my
            property back.  They refused.
16
            I called the Fresno Police after I moved out of California many times the summer of 2006
17         but could get no definitive answer as to what happened to my property.

18  Defendants conclude that Ms. Sholtis' "ability to attend to these matters demonstrates that she was not

19  insane within the meaning of the statute."

20     The SAC and Ms. Sholtis' declaration suggest her ability to care for her property, transact

21  business, and understand the nature of her acts.  Ms. Sholtis' stays in mental health units did not

22  constitute, by themselves, insanity under California Code of Civil Procedure section 352(a).  The SAC

23  fails to allege sufficient facts to toll the running of the two-year limitations period on Ms. Sholtis'

24  section 1983 claims to render them time barred.

25              **Unreasonable Search And Seizure Claim's Merits**

26                  ***Reasonable Expectation Of Privacy***

27     Defendants attack the merits of Ms. Sholtis' unreasonable search and seizure claim in that Ms.

28  Sholtis lacked a reasonable expectation of privacy as a trespasser in the home where she was found.

1    "Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person

2    acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the

3    claimant of some right, privilege, or immunity protected by the Constitution or laws of the United

4    States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

5    "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for

6    vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807,

7    811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).

8    Section 1983 and other federal civil rights statutes address  liability "in favor of persons who are

9    deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*,

10   435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984,

11   996 (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived

12   of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689

13   (1979).  Stated differently, the first step in a section 1983 claim is to identify the specific constitutional

14   right allegedly infringed.  *Albright*, 510 U.S. at 271, 114 S.Ct. at 811.

15       The "capacity to claim the protection of the Fourth Amendment depends not upon a property

16   right in the invaded place but upon whether the person who claims the protection of the Amendment has

17   a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct.

18   421 (1978).  There is a twofold requirement for Fourth Amendment protection: "first that a person have

19   exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that

20   society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507

21   (1967) (Harlan, concurring).

22       Defendants correctly note the SAC's absence of facts of Ms. Sholtis' reasonable expectation of

23   privacy in the home in which she trespassed.  The SAC merely notes that Ms. Sholtis "found my way

24   into a house . . ., thinking I have been invited inside by the owner."  The SAC lacks facts of the owner's

25   express invitation or that the owner was present when Ms. Sholtis entered and took her bath.  The SAC

26   suggests that the defendant officers arrived within a short time of Ms. Sholtis' entry into the home.  The

27   SAC lacks sufficient facts to support Ms. Sholtis' reasonable expectation of privacy in the home.

28   / / /

10

1      _____*Unreasonable Seizure*

2          Defendants attack the SAC's failure to plead that Ms. Sholtis "was unreasonably seized by the

3      defendant officers."

4          California Welfare and Institutions Code section 5150 authorizes detention and taking into

5      custody "upon probable cause" "any person [who], as a result of mental disorder, is a danger to others,

6      or to himself or herself . . ."   The statute authorizes a 72-hour hold of such person.

7          A seizure of a mentally ill person "is analogous to a criminal arrest and must therefore be

8      supported by probable cause."   *Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991).   "To constitute

9      probable cause to detain a person pursuant to section 5150, a state of facts must be known to the peace

10     officer (or other authorized person) that would lead a person of ordinary care and prudence to believe,

11     or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to

12     himself or herself or is gravely disabled."   *Heater v. Southwood Psychiatric Center*, 42 Cal.App.4th

13     1068, 1080, 49 Cal.Rptr.2d 880 (1996) (quoting *People v. Triplett,* 144 Cal.App.3d 283, 287-288, 192

14     Cal.Rptr. 537 (1983)).

15         Defendants correctly attack the SAC's absence of facts that a decision to detain Ms. Sholtis was

16     unreasonable given that she remained in a psychiatric unit for 10 days following her detention.   The

17     SAC's allegations of further hospitalizations further supports the defendant officers' reasonable

18     determination to take the action they did.   The SAC lacks a cognizable unreasonable seizure claim.

19                                             *Excessive Force*

20         Defendants contend that the SAC fails to allege sufficient facts of excessive force in that the SAC

21     alleges that a female officer grabbed her private parts during a scuffle and that an officer commented that

22     "at jail they have weapons."

23         "Section 1983 creates a cause of action based on personal liability and predicated upon fault;

24     thus, liability does not attach unless the individual defendant caused or participated in a constitutional

25     deprivation."   *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct.

26     1822 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises

27     only upon a showing of personal participation by the defendant.")   "The inquiry into causation must be

28     individualized and focus on the duties and responsibilities of each individual defendant whose acts or

                                                  11

1   omissions are alleged to have caused the constitutional deprivation." *Leer*, 844 F.2d at 633.

2        A plaintiff cannot hold an officer liable "because of his membership in a group without a

3   showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th

4   Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).  A plaintiff must "establish the

5   'integral participation' of the officers in the alleged constitutional violation." *Jones*, 297 F.3d at 935.

6   "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a

7   constitutional violation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004).  Integral

8   participation requires "some fundamental involvement in the conduct that allegedly caused the

9   violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007).  "A person

10  'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he

11  does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he

12  is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588

13  F.2d 740, 743 (9th Cir. 1978).

14       The SAC lacks allegations of the defendant officers' individual wrongs or personal participation

15  to cause a constitutional deprivation.  The SAC fails to distinguish among the defendant officers and

16  impermissibly lumps them together to attempt to establish section 1983 liability.  The SAC lacks

17  sufficient allegations that the defendant officers committed affirmative acts, or participated in others'

18  affirmative acts, of excessive force.  The SAC lacks a cognizable excessive force claim.

19                              **Deprivation Of Property Claim's Merits**

20       Defendants challenge the SAC's deprivation of property claim's absence of sufficient facts.

21       "The Fourteenth Amendment to the United States Constitution places procedural constraints on

22  the actions of government that work a deprivation of interests enjoying the stature of 'property' within

23  the meaning of the Due Process Clause." *Coleman v. Dept. of Personnel Admin*. 52 Cal.3d 1102, 1112,

24  278 Cal.Rptr. 346 (1991).  Property interests that are subject to due process protections are not created

25  by the federal Constitution.  *Bostean v. Los Angeles Unified School Dist.*, 63 Cal.App.4th 95, 108-109,

26  73 Cal.Rptr.2d 523 (1998).  Such property interests are created, and their dimensions are defined by

27  existing rules or understandings that stem from an independent source, such as state law.  *Bostean*, 63

28  Cal.App.4th at 108-109, 73 Cal.Rptr.2d 523.

1    Upon determination that the Due Process Clause applies, "the question remains what process is

2    due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972).  An essential principle of

3    due process is that deprivation of life, liberty or property "be preceded by notice and opportunity for

4    hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

5    306, 313, 70 S.Ct. 652 (1950).  "The fundamental requirement of due process is the opportunity to be

6    heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96

7    S.Ct. 893 (1976).

8    Where a meaningful pre-deprivation hearing is practicable, post-deprivation remedies do not

9    provide due process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 1158 (1982).

10   "[P]ostdeprivation remedies do not satisfy due process where a deprivation of property is caused by

11   conduct pursuant to established state procedure, rather than random and unauthorized action." *Hudson*

12   *v. Palmer*, 468 U.S. 517, 532, n. 13, 104 S.Ct. 3194 (1984).  However, "when deprivations of property

13   are effected through random and unauthorized conduct of a state employee, predeprivation procedures

14   are simply 'impracticable' since the state cannot know when such deprivations will occur." *Hudson*, 468

15   U.S. at 533, 104 S.Ct. 3194.  "[A]n unauthorized intentional deprivation of property by a state employee

16   does not constitute a violation of the procedural requirements of the Due Process Clause of the

17   Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468

18   U.S. at 533, 104 S.Ct. 3194.

19   The SAC fails to allege that Ms. Sholtis was deprived of her belongings based on an established

20   procedure.  In fact, the SAC suggests that Ms. Sholtis belongings were lost pursuant to random acts to

21   render predisposition procedures impractical.  Similar to the unreasonable search and seizure claim, the

22   deprivation of property claim fails to link particular defendant officers to the alleged constitutional

23   deprivation.  Section 1983 requires that there be an actual connection or link between the defendant's

24   actions and the deprivation allegedly suffered.  *See Monell v. Department of Social Services*, 436 U.S.

25   658, 98 S.Ct. 2018 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976).  "A plaintiff must allege

26   facts, not simply conclusions, that show that an individual was personally involved in the deprivation

27   of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  The SAC's allegation

28   of the defendant officers' presence at the scene is insufficient to establish a deprivation of property

13

1    claim.

2          Defendants further correctly note inability to plead the absence of a post-deprivation remedy

3    given the availability to pursue claims under the California Government Claims Act, Cal. Gov. Code,

4    §§ 810, et seq.  Moreover, "[m]ere negligence of the police [to destroy plaintiff's property] would not

5    violate the due process clause, and he would have no federal claim for such negligence if it occurred."

6    *Stone v. Agnos*, 960 F.2d 893, 895 (9th Cir. 1992).

7          In short, Ms. Sholtis' deprivation of property claim fails to warrant its dismissal.

8                        **California Government Claims Act Requirements**

9          Defendants contend that the SAC's five California constitutional, statutory and common law

10   claims are barred due to Ms. Sholtis' failure to comply with the California Government Claims Act.

11         The California government claims statutes require timely filing of a proper claim as condition

12   precedent to maintenance of an action.  Cal. Gov. Code, §§ 905, 911.2, 945.4 (presentment of a written

13   claim to the applicable public entity is required before a "suit for money or damages may be brought

14   against a public entity"); *County of San Luis Obispo v. Ranchita Cattle Co.*, 16 Cal.App.3d 383, 390,

15   94 Cal.Rptr. 73 (1971).  California Government Code section 911.2(a) provides: "A claim relating to

16   a cause of action for death or for injury to person . . . shall be presented . . . not later than six months

17   after the accrual of the cause of action.  A claim relating to any other cause of action shall be presented

18   . . . not later than one year after the accrual of the cause of action."   Government Code section

19   945.6(a)(1) requires a claimant to file a civil action within six months after the public agency issues its

20   decision.  *Javor v. Taggart*, 98 Cal.App.4th 795, 804, 120 Cal.Rptr.2d 174 (2002).

21         The claims procedures applicable to actions against public employees are the same for actions

22   against public entities.  Cal. Gov. Code, §§ 950-950.6.  Compliance with the claims statutes is

23   mandatory. *Farrell v. County of Placer*, 23 Cal.2d 624, 630, 145 P.2d 570 (1944).  Failure to file a claim

24   is fatal to the cause of action.  *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183, 10 Cal.Rptr. 409

25   (1961). "[F]ailure to allege facts demonstrating or excusing compliance with the claim presentation

26   requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action."

27   *State v. Superior Court*, 32 Cal.4th 1234, 13 Cal.Rptr.3d 534, 538 (2004).

28         The SAC alleges that Ms. Sholtis "has filed an administrative claim with the City of Fresno

                                          14

1   pursuant to California Government Code Section 910 *et. seq.*"  There is no allegation that Ms. Sholtis

2   complied with the Government Claims Act or is excused from compliance.

3          On February 26, 2008, Ms. Sholtis submitted to the City her application for leave to present late

4   claim, claim for damages, and supporting declaration.  The City returned the claim to Ms. Sholtis

5   because the claim was not presented within one year of accrual of the cause of action.

6          When a claim is untimely under California Government Code section 911.2, a claimant may

7   apply to the public entity to make a belated claim "within a reasonable time not to exceed one year after

8   the accrual of the cause of action and shall state the reason for the delay in presenting the claim."

9   California Gov. Code, § 911.4(a), (b).  Defendants argue that the City properly returned the claim in that

10  Ms. Sholtis applied to make a late claim two years after accrual of her cause of action.

11         Time during which the claimant was mentally incapacitated and did not have a guardian is

12  excluded from the one-year period to seek to file a belated claim.  Cal. Gov. Code, § 911.4(c)(1).  The

13  SAC alleges that Ms. Sholtis was hospitalized for psychiatric treatment for 8½ months during March

14  2006 to December 2007.  However, the SAC does not establish that Ms. Sholtis' hospitalization

15  constitutes mental incapacity under California Government Code section 911.4(c)(1).  Conditions to

16  excuse timely government claim presentation include those that "substantially" interfere with ability to

17  function in daily life, to take care of personal and business affairs, or to seek out legal counsel.  *See*

18  *People ex rel. Dept. of Transportation v. Superior Court*, 105 Cal.App.4th 39, 46, 129 Cal.Rptr.2d 60

19  (2003).  "A person can be disabled yet be able to file a timely claim."  *Draper v. City of Los Angeles*,

20  52 Cal.3d 502, 509, 276 Cal.Rptr. 864 (1990).

21         The SAC and Ms. Sholtis' declaration suggest that she was able to file a timely government

22  claim in that they reveal that Ms. Sholtis contacted the Department in the weeks and months following

23  the February 28, 2006 incident.  The SAC does not allege that Ms. Sholtis was unable to function in her

24  daily life or care for her personal and business affairs.  The SAC does not support that Ms. Sholtis'

25  hospitalizations translates to disability to excuse failure to comply with the Government Claims Act.

26  Ms. Sholtis' failure to satisfy requirements of the Government Claims Act supports dismissal of her

27  California-based claims.

28  / / /

15

## Unreasonable Search And Seizure Under California Constitution

The SAC's third claim alleges that defendants "violated plaintiffs' [sic] right to be free from unreasonable searches and seizures under Article 1 Section 13 of the California Constitution."

Article 1, section 13 of the California Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized.

Defendants note the similarity of these protections to those under the Fourth Amendment to warrant dismissal of the third claim on the same grounds as dismissal of the SAC's (first) unreasonable search and seizure claim.

Defendants are correct. Pursuit of an unreasonable search and seizure claim under the California Constitution does not revitalize such a claim to warrant dismissal of the third claim.

## Denial Of Due Process Under The California Constitution

The SAC's fourth claim alleges that defendants violated "plaintiffs' [sic] right to due process of law under Article 1, Section 7(A) of the California Constitution."

Article 1, section 7(a) provides that a "person may not be deprived of life, liberty, or property without due process of law . . ." In *Katzberg v. Regents of the University of California*, 29 Cal.4th 300, 303, 127 Cal.Rptr.2d 482 (2000), the California Supreme Court concluded that a claim for damages is unavailable under that section of the California Constitution. There is no "constitutional tort cause of action for damages to remedy an asserted violation of the due process 'liberty' interest under article 1, section 7(a)." *Katzberg*, 29 Cal.4th at 326, 127 Cal.Rptr.2d 482.

Even in the absence of a cognizable damages claim, the SAC lacks facts to support a due process deprivation to further warrant dismissal of the fourth claim.

## Duty To Safeguard Property

The SAC's fifth claim alleges that defendants violated California Civil Code section 2080, et seq., by failure "to safeguard the personal property of plaintiff," "to document the property found," and "to make arrangements to permit her to retrieve it" to invoke liability under California Government Code section 815.6.

16

1   California Civil Code section 2080 provides: "Any person who finds a thing lost is not bound

2   to take charge of it, unless the person is otherwise required to do so by contract or law . . ." Defendants

3   acknowledge that "a police agency has a duty to take care of lost property that has been delivered to the

4   agency." *See* Cal. Civ. Code, § 2080.10.

5   Defendants challenge that the City possessed Ms. Sholtis' belongings. Ms. Sholtis' declaration

6   notes that the owner of the home in which she entered "had kept my property for thirty days and then

7   disposed of it. I left letters at the house where this happened with any address and telephone where I

8   could be reached but there was no response." Ms. Sholtis' declaration acknowledges that defendants

9   did not possess her belongings to impose a duty on them to care for it. Moreover, the SAC lacks facts

10  to substantiate defendants' duty to safeguard Ms. Sholtis' belongings to further warrant dismissal of the

11  fifth claim.

12  **California Civil Code Section 52.1**

13  The SAC's sixth claim alleges that defendants' conduct constitutes "interference, and attempted

14  interference, by threats, intimidation and coercion, with plaintiffs' [sic] exercise and enjoyment of rights

15  secured [sic] the Constitutions and laws of the United States and California, in violation of California

16  Civil Code Section 52.1."

17  Defendants fault the California Civil Code section 52.1 ("section 52.1") claim in the absence of

18  an underlying constitutional violation.

19  Section 52.1 permits a civil action against a person who interferes or attempts to interfere by

20  threats, intimidation or coercion with "exercise or enjoyment" of rights secured by the U.S. and

21  California Constitutions and laws. Section 52.1 in intended to "stem a tide of hate crimes." *Jones v.*

22  *Kmart Corp.*, 17 Cal.4th 329, 338, 70 Cal.Rptr.2d 844 (1998). "Section 52.1 does not provide any

23  substantive protections; instead, it enables individuals to sue for damages as a result of constitutional

24  violations." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996).

25  Defendants correctly note the failure of a section 52.1 claim in the absence of valid constitutional

26  claims especially given the defendant officers' grounds to detain Ms. Sholtis under California Welfare

27  and Institutions Code section 5150 and the unavailability of a deprivation of property claim. In addition,

28  the SAC lacks allegations of threats, intimidation or coercion to interfere with rights to further doom the

17

1   section 52.1 claim.

2                                   **Conversion**

3        The SAC's (seventh) conversion claim alleges that defendants committed "an unlawful

4   conversion" of Ms. Sholtis' property.

5        "Conversion is the wrongful exercise of dominion over the property of another. The elements

6   of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the

7   defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Burlesci*

8   *v. Petersen*, 68 Cal.App.4th 1062, 1065, 80 Cal.Rptr.2d 704 (1998).

9         "To establish a conversion, plaintiff must establish an actual interference with his ownership or

10  right of possession. . . . Where plaintiff neither has title to the property alleged to have been converted,

11  nor possession thereof, he cannot maintain an action for conversion." *Del E. Webb Corp. v. Structural*

12  *Materials Co.,* 123 Cal.App.3d 593, 610-611, 176 Cal.Rptr. 824 (1981).

13       Defendants argue that the City is not subject to "direct tort liability" in the absence of a specific

14  statute "creating such liability."

15       The California Government Claims Act does not provide that a public entity is liable for its own

16  conduct or omission to the same extent as a private person or entity. *Zelig v. County of Los Angeles*, 27

17  Cal.4th 1112, 1128, 119 Cal.Rptr.2d 709, 722 (2002).  California Government Code section 815(a)

18  provides that a "public entity is not liable for an injury, whether such injury arises out of an act or

19  omission of the public entity or a public employee or any other person," "[e]xcept as otherwise provided

20  by statute."  Certain statutes provide expressly for public entity liability in circumstances that are

21  somewhat parallel to the potential liability of private individuals and entities, but the Government

22  Claims Act's intent "is not to expand the rights of plaintiffs in suits against governmental entities, but

23  to confine potential governmental liability to rigidly delineated circumstances." *Brown v. Poway Unified*

24  *School Dist.*, 4 Cal.4th 820, 829, 15 Cal.Rptr.2d 679 (1993); *see Michael J. v. Los Angeles County Dept.*

25  *of Adoptions*, 201 Cal. App.3d 859, 866, 247 Cal.Rptr. 504  (1988) ("Under the Act, governmental tort

26  liability must be based on statute; all common law or judicially declared forms of tort liability, except

27  as may be required by state or federal Constitution, were abolished.")

28       A court first determines whether a statute "imposes direct liability" on a defendant public entity.

                                              18

1   *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1111, 16 Cal.Rptr.3d 521, 547 (2004). "[D]irect

2   tort liability of public entities must be based on a specific statute declaring them to be liable, or at least

3   creating some specific duty of care, and not on the general tort provisions of [California] Civil Code

4   section 1714." *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1183, 80 P.3d 656

5   (2003). "[B]ecause under the Tort Claims Act all governmental tort liability is based on statute, the

6   general rule that statutory causes of action must be pleaded with particularity is applicable." *Lopez v.*

7   *So. Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 795, 221 Cal.Rptr. 840 (1985). Thus, "to state a cause of

8   action against a public entity, every fact material to the existence of its statutory liability must be pleaded

9   with particularity." *Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 819, 131 Cal.Rptr.

10  854 (1960).

11          Defendants are correct that the SAC lacks reference to statutory basis to impose liability on the

12  City for common law conversion.

13          Defendants fault the SAC's lumping of the defendant officers "without stating how each

14  defendant engaged in a wrongful act that deprived her of her property."  Defendants' criticism is well

15  taken in that the SAC merely suggests that the defendant officers left Ms. Sholtis' belonging at the house

16  in which she entered and that the home's owner maintained the belongings until disposing of them.  The

17  SAC fails to satisfy conversion elements to warrant dismissal of the claim.

18                                              **Attempt At Amendment And Malice**

19          Ms. Sholtis' claims are insufficiently pled and barred as a matter of law.  Ms. Sholtis is unable

20  to cure her claims by allegation of other facts and thus is not granted an attempt to amend, especially

21  given her unsuccessful prior attempts to amend.

22          Moreover, this Court is concerned that Ms. Sholtis brought this action in absence of good faith

23  and attempts to take advantage of cost-free filing to vex defendants.  The test for maliciousness is a

24  subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v.*

25  *Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th

26  Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss

27  case demonstrating "clear pattern of abuse of judicial process").  A lack of good faith or malice also can

28  be inferred from a complaint containing untrue material allegations of fact or false statements made with

19

1  intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984).  An attempt to vex

2  defendants provides further grounds to dismiss this action.

3                          **CONCLUSION AND ORDER**

4       For the reasons discussed above, this Court:

5       1.      DISMISSES this action with prejudice;

6       2.      DIRECTS the clerk to enter judgment against plaintiff Beth Sholtis and in favor of

7               defendants City of Fresno, Fresno Police Department, and Department officers Antonio

8               Route, Daniel Gomez, Chris Cooper, Ryan Stockdale and Jennifer McClelland; and

9       3.      FURTHER DIRECTS the clerk to close this action.

10      IT IS SO ORDERED.

11  **Dated:    November 17, 2009            /s/ Lawrence J. O'Neill**
                                    UNITED STATES DISTRICT JUDGE